UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CANDACE L. DELOZIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-CV-197-DCP |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 17].

Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in

Support [Docs. 18 & 19] and Defendant's Motion for Summary Judgment and Memorandum in

Support [Docs. 20 & 21]. Candace L. Delozier ("Plaintiff") seeks judicial review of the decision

of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul

("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and

**GRANT** the Commissioner's motion.

## I. PROCEDURAL HISTORY

On May 27, 2015, Plaintiff protectively filed an application for disability insurance

benefits and supplemental security income benefits pursuant to Titles II and XVI of the Social

Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.*, claiming a period of disability that began

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

on January 6, 2015. [Tr. 16, 210–20]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 155]. A hearing was held on February 8, 2017. [Tr. 37–77]. On September 25, 2017, the ALJ found that Plaintiff was not disabled. [Tr. 16–30]. The Appeals Council denied Plaintiff's request for review on April 6, 2018 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on May 22, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2016.

2. The claimant has not engaged in substantial gainful activity since January 6, 2015, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: back disorder, status-post remote left knee replacement, obesity, major depression, bipolar disorder, and polysubstance use disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except she could occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds and could occasionally

2

balance, stoop, kneel, crouch, and crawl. In addition, she could perform simple and detailed tasks but is limited to work where interaction with coworkers and supervisors is occasional and there is no interaction with the general public. She is limited to work where changes in the workplace are infrequent.

6. The claimant is capable of performing past relevant work as a sausage inspector. This work dos not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 6, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 19–29].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).  Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.

> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

> 3.   If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to

4

last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.    ANALYSIS

Plaintiff asserts that the ALJ's disability decision is not supported by substantial evidence in several regards. First, Plaintiff maintains that the ALJ improperly found that she did not meet Listings 1.04 or 12.04 during step three of the disability determination. [Doc. 19 at 8–11]. Next, Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because the RFC contradicts the medical opinion of consultative psychologist Kevin Blanton, Ph.D., whose opinion was supported by the opinion of nonexamining state agency psychologist Larry Welch,

Ed.D. and the medical source statement provided by Plaintiff's therapist, Sarah Hillon, M.S.W. [*Id.* at 12–14]. The Court will address Plaintiff's specific allegations of error in turn.

### A.     ALJ's Step Three Determination

Plaintiff asserts that the ALJ improperly failed to find that she met Listing 12.04, as well as failed to examine whether she met the requirements of Listing 1.04. [*Id.* at 8–11]. The Commissioner responds that the ALJ appropriately considered whether Plaintiff met Listing 12.04, as well as that Plaintiff fails to point to evidence establishing that she met Listing 1.04. [Doc. 21 at 9–15].

At step three of the sequential evaluation, a claimant may establish disability by demonstrating that his impairment is of such severity that it meets, or medically equals, one of the listings within the "Listing of Impairments" codified in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *Foster v. Halter*, 279 F.3d 348, 352 (6th Cir. 2001). The Listings describe impairments that the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). A claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits, but the claimant has the burden to prove that all of the elements are satisfied. *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Walters*, 127 F.3d at 529. Only when an impairment satisfies all of the Listing's criteria will the impairment be found to be of listing level severity. 20 C.F.R. § 404.1525(d).

In determining whether an impairment is of listing level severity, the ALJ is tasked with comparing the medical evidence of record with a Listing's requirements. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011). However, the Sixth Circuit rejected "a heighted

articulation standard" with regard to the ALJ's step three finding. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). "If a claimant does not have one of the findings, however, she can present evidence of some medical equivalent to that finding." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 854 (6th Cir. 2011) (citations omitted). Yet, it is not sufficient to come close to meeting the conditions of a Listing. *See, e.g.*, *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (affirming Commissioner's decision that Plaintiff didn't meet Listing where medical evidence "almost establishes a disability"). Plaintiff has the burden of proving that her impairments meet or medically equal the criteria of Listing 12.04 and 1.04 by pointing to specific medical findings that satisfy all of the criteria of the listing. *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 433 (6th Cir. 2016); *Wredt ex rel. E.E. v. Colvin*, No. 4:12-cv-77, 2014 WL 281307, at *5 (E.D. Tenn. Jan. 23, 2014) (citations omitted).

### 1. Listing 12.04

Plaintiff asserts that substantial evidence supports a finding that she meets Listing 12.04. First, Plaintiff alleges that the opinion of consultative examiner Dr. Blanton establishes that "her ability to sustain attention and concentration, ability to interact with people, and her ability to adapt to changes in routine or work-life setting is moderately to severely (markedly) impaired." [Doc. 19 at 9]. Further, Plaintiff maintains that Dr. Blanton's opinion was supported by the opinions of the nonexamining state agency psychologists, as well as the opinion of her treating therapist, Ms. Hillon, and her mental health treatment notes. [*Id.*].

The Commissioner claims that the ALJ's finding that Plaintiff did not meet Listing 12.04 is supported by substantial evidence. The Commissioner states that the ALJ explicitly discussed whether Plaintiff met the requirements under the applicable Listing and detailed her reasoning, supported by specific evidence, for finding that Plaintiff had only moderate limitations in the

"paragraph B" criteria.  [Doc. 21 at 14–15].

Listing 12.04 addresses depressive, bipolar and related disorders.  Applicable listings addressing mental health impairments contain the following criteria: (1) "Paragraph A" criteria, impairment-related symptoms; (2) "Paragraph B" criteria, impairment-related limitations; and (3) "Paragraph C" criteria, additional functional criteria.  20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(A), 12.04.  A claimant can meet the requirements of Listing 12.04 only if she satisfied either: (1) the criteria of both Paragraphs A and B; or (2) the criteria of Paragraph C.  *See Bowman v. Comm'r of Soc. Sec.*, 683 F. App'x 367, 372 (6th Cir. 2017).  Here, Plaintiff claims that the ALJ improperly found that her impairments did not meet or equal the "paragraph B" criteria; thus, the Court will focus its analysis on the applicable impairment-related limitations.  *Id.*

"The common functional limitations criteria in Paragraph B of Listing[ ] 12.04 . . . require[s] the claimant to show that [her] disorder(s) resulted in an "extreme limitation of one or marked limitation of two, of the following areas of mental functioning: (1) understand, remember or apply information; (2) interact with others; (3) concentrate, persist or maintain pace; (4) adapt or manage oneself."  *See Sanders v. Comm'r of Soc. Sec.*, No. 1:18-CV-1941, 2019 WL 2570494, at *12 (N.D. Ohio June 5, 2019) (internal citations omitted), *report and recommendation adopted sub nom.*, *Sanders v. Saul*, 2019 WL 2567718 (N.D. Ohio June 20, 2019); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(b).

In the disability decision, the ALJ first found that Plaintiff's major depression, bipolar disorder, and polysubstance use disorder qualified as severe mental impairments.  [Tr. 19].  However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings.  [Tr. 20].  The ALJ specifically addressed Listing 12.04 and found that Plaintiff's mental impairments did not cause at least two

"marked" limitations or one "extreme" limitation under the paragraph B criteria. [*Id.*]. First, the ALJ found that Plaintiff had moderate limitations in understanding, remembering, or applying information. [*Id.*]. The ALJ noted that Plaintiff alleged difficulty with household chores and completing tasks due to *physical* issues, as well as that during her psychological consultative examination with Dr. Blanton, she reported that she could grocery shop, take medications, dress and bathe herself, often fix simple meals, and that she does any housework but has physical limitations due to her back and left knee pain. [*Id.*]. The ALJ also detailed that while Plaintiff's memory was found to be a potential problem during the examination, as she was able to recall two of three simple objects after a brief delay, she was also able to describe her prior work history, provide information about her health, and respond to questions. [*Id.*].

Additionally, the ALJ found that Plaintiff had a moderate limitation in interacting with others. [*Id.*]. The ALJ contrasted Plaintiff's allegations of difficulty engaging in social activities, getting along with others, and dealing appropriately with authority, with her ability to attend activities outside the home—including church, a vacation, visiting with neighbors, and a Christmas party. [Tr. 20–21]. Further, the ALJ reviewed that Plaintiff stated that her difficulty in relating with people was in part because she had a baby. [Tr. 20]. The ALJ also detailed that during her consultative examination, Plaintiff was described as pleasant and cooperative. [Tr. 21]. Lastly, the ALJ noted that Plaintiff testified that she attends Bible study classes and church. [*Id.*].

Next, the ALJ found that Plaintiff had moderate limitation in concentrating, persisting, or maintaining pace. [*Id.*]. While the ALJ noted Plaintiff's allegations of limitations in concentration and focus generally, completing tasks, avoiding distractions, and maintaining a regular work schedule, the ALJ also discussed Plaintiff's ability to "handle the previously mentioned activities of daily living." [*Id.*]. Additionally, the ALJ reviewed that during her consultative examination

with Dr. Blanton, Plaintiff was able to complete testing that assessed concentration and attention, including being able to perform serial 3's and that her concentration was deemed "good to fair." [*Id.*]. Lastly, the ALJ found that Plaintiff has moderate limitations in adaption, weighing Plaintiff's assertions of difficulties handling change and managing her mood with her ability to perform self-care and personal hygiene, as well as testimony that she can use a cellphone, perform household chores, and check on her grandmother. [*Id.*]. The ALJ also found that the evidence failed to establish the presence of the paragraph C criteria under Listing 12.04, and noted that no state agency psychological consultant concluded that Plaintiff's medical impairments equaled a Listing. [*Id.*].

Plaintiff asserts that substantial evidence supports a finding that she met Listing 12.04, largely due to Dr. Blanton's opinion. Dr. Blanton consultatively examined Plaintiff on August 12, 2015 and reviewed Plaintiff's personal and family history, work history, substance abuse history, current signs and symptoms, activities of daily living, and performed a mental status examination. [Tr. 706–11]. Accordingly, Dr. Blanton opined that Plaintiff's ability to understand and remember instruction was moderately impaired as a result of her mood and anxiety difficulties; as well as that her ability to sustain attention and concentration, ability to interact with people, and ability to adapt to changes in routine or a work-like setting were moderately to severely impaired as a result of mood and anxiety difficulties. [Tr. 710].

In the disability decision, the ALJ afforded some weight to Dr. Blanton's opinion, finding that great weight was given to the portion of the opinion that Plaintiff has moderate limitation in her ability to understand and remember, as it was consistent with the overall record. [Tr. 26]. However, the ALJ found that Dr. Blanton's opinions that Plaintiff had more than moderate limitations in the ability to sustain attention and concentration, interact socially, and adapt were

entitled to little weight, "as the record in its entirety supports moderate limitations in these areas." [*Id.*]. In particular, the ALJ noted Plaintiff's ability to live alone, take a vacation, attend a Christmas party, help an older couple, and check on her grandmother. [*Id.*].

Plaintiff asserts that Dr. Blanton's opinion "with regard to these marked limitations was fully supported by agency consultants Drs. Welch and Wright," as well as the opinion of her treating therapist, Sarah Hillon. [Doc. 19 at 9]. Dr. Welch reviewed the evidence of record at the initial level of the agency's review and opined that Plaintiff had mild restrictions in activities of daily living with moderate difficulties in social functioning and concentration, persistence, and pace. [Tr. 87]. Dr. Wright reviewed the evidence of record at the reconsideration level of the agency's review and opined similar limitations. [Tr. 116]. The ALJ afforded these opinions great weight, finding that they were consistent with the medical record and Plaintiff's daily activities, noting that "[t]hey both essentially determined [that Plaintiff] can perform simple and detailed tasks, can occasionally interact with co-workers and supervisors with no interaction with the general public, and can adapt to infrequent changes." [Tr. 26].

Plaintiff's therapist, Ms. Hillon, completed a Medical Source Statement on October 12, 2015. [Tr. 712–19]. Ms. Hillon noted that she had seen Plaintiff weekly since July 2014, and first opined that Plaintiff's ability to remember locations and work-like procedures, as well as understand and remember very short and simple instructions, would preclude her performance for 10% of an eight-hour work day, while her ability to understand and remember detailed instructions would preclude performance for 5% of an eight-hour work day. [Tr. 713]. Next, when assessing Plaintiff's sustained concentration and memory, she found that Plaintiff's ability to maintain attention and concentration for extended periods of time, perform activities within a schedule and maintain regular attendance, work in coordination with or in proximity to others without being

distracted, and complete a normal workday and workweek without interruption would preclude performance for more than 15% of an eight-hour workday. [*Id.*]. Similarly, Ms. Hillon opined that Plaintiff's ability to carry out very short and simple instructions, sustain an ordinary routine without special supervision, and make simple work-related decision would preclude her performance for 10% of an eight-hour workday, as well as that her ability to carry out detailed instructions would preclude her performance for 5% of an eight-hour workday. [*Id.*]. When assessing Plaintiff's social interaction, Ms. Hillon found that Plaintiff's ability to interact appropriately with the general public, accept instructions and respond appropriately to supervisors, get along with coworkers, and maintain socially appropriate behavior would preclude her performance for 15% of an eight-hour workday, while her ability to ask simple questions or request assistance would preclude her performance for 10% of an eight-hour workday. [Tr. 714]. Lastly, Ms. Hillon opined that Plaintiff's abilities relating to adaptation would preclude her performance for 15% or more of an eight-hour workday. [*Id.*].

The ALJ afforded little weight to Ms. Hillon's opinion, first noting that she was not an acceptable medical source. [Tr. 26]. Further, the ALJ found that the opinion was overly restrictive and not consistent with Plaintiff's daily activities, including checking on her grandmother, living alone, and performing some work on the farm. [*Id.*]. The ALJ also noted internal inconsistencies within the opinion, such as detailing that Ms. Hillon provided no explanation for her opinion that Plaintiff "would be better equipped to handle detailed tasks than she would short and simple tasks." [*Id.*].

Ultimately, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff did not meet the applicable requirements for Listing 12.04. At step three in the disability determination, the ALJ found that Plaintiff only had moderate limitations in understanding,

remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. [Tr. 20–21]. When challenging the cited daily activities discussed by the ALJ in support of her finding regarding understanding, remembering, or applying information, Plaintiff asserts that the ALJ failed to mention that she relies upon a medication reminder box. [Doc. 19 at 5]. However, the ALJ provided several daily activities in support of her opinion, including stating that she could dress and bathe herself daily without limitation, and that her difficulty with completely tasks was largely due to her physical issues, as well as detailing Plaintiff's results at her consultative examination with Dr. Blanton. [Tr. 20].

Plaintiff similarly claims that the ALJ failed to mention her testimony that she has had issues in her past with her supervisors when analyzing Plaintiff's ability to interact with others. [Doc. 19 at 5–6]. With respect to the area of concentration, Plaintiff asserts that the ALJ ignored her testimony that she is unable to sit through an entire church service, despite basing her finding, in part, on Plaintiff's ability to attend church services. [*Id.* at 6]. Lastly, Plaintiff claims that the ALJ's cited reasoning of her ability to check on her grandmother and take care of her self-hygiene do not "directly relate to one's ability to adapt to change." [*Id.*].

The Court notes, however, that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Dykes ex rel. Brymer v. Barnhart,* 112 F. App'x 463, 467 (6th Cir. 2004); *see also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (holding that "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."). Here, the ALJ referenced several daily activities in support of her finding that Plaintiff had no more than moderate limitations in any of the paragraph B criteria,

as well as reviewed the results of Plaintiff's consultative examination with Dr. Blanton. The Court does not find that the ALJ mischaracterized Plaintiff's daily activities; but rather that she appropriately assessed the totality of Plaintiff's reported daily activities in reviewing the paragraph B criteria. Further, the ALJ noted that the state agency psychological consultants found that Plaintiff's mental impairments did not meet or medically equal any of the Listings.

In reviewing an ALJ's step three determination, the Court may also look elsewhere in the disability decision to support the ALJ's finding. *See Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (rejecting argument that the ALJ erred by not making specific findings at step three because the ALJ's conclusion was supported by substantial evidence in the record). Here, although Plaintiff claims that Dr. Blanton's opinion supported a finding that she met the requirements for Listing 12.04, the ALJ appropriately detailed her reasoning for finding that Dr. Blanton's opinions that Plaintiff had more than moderate limitations were entitled to little weight. [Tr. 26]. The ALJ detailed how Plaintiff's reported daily activities conflicted with the assessed "more than moderate" limitations, while also finding that Plaintiff had moderate limitations in mental functioning. [*Id.*].

Plaintiff does not challenge the ALJ's rationale for affording little weight to the opinion, but claims that Dr. Blanton's opinion was "fully supported" by the opinions of the nonexamining state agency consultants and consistent with Ms. Hillon's opinion. [Doc. 19 at 9]. *See, e.g.*, *Hensley v. Berryhill*, No. CV 18-48-HRW, 2019 WL 1179390, at *4 (E.D. Ky. Mar. 13, 2019) (addressing consultative psychologist's opinion and noting that "Plaintiff does not challenge the ALJ's stated reasons for discounting Dr. Rigby's opinion; instead, he contends that the ALJ 'did not take these uncontradicted opinions . . . into account.' Plaintiff misconstrues what the law requires. The ALJ was under no obligation to accept Dr. Rigby's opinion wholesale, given that it

14

lacked support in both his examination findings and the rest of the record").  Additionally, Dr.

Blanton's opinion was not fully supported by the opinions of the nonexamining state agency

consultants, as Dr. Welch and Dr. Wright opined that Plaintiff did not meet the requirements of

Listing 12.04, and only had moderate difficulties with concentration and social functioning, as

well as mild restrictions in activities of daily living.  [Tr. 87, 116]; *see, e.g.*, *Thomas v. Comm'r of*

*Soc. Sec.*, No. 1:18-CV-00065-SKL, 2019 WL 1748512, at *7 (E.D. Tenn. Apr. 18, 2019) (finding

substantial evidence to support the ALJ's determination that the plaintiff failed to show she met

Listing 12.04, as the "ALJ sufficiently explained his decision not to assign controlling weight to

Dr. Spalding's opinion" and the state agency consultants did not find that the plaintiff met any

mental impairment listing).

Lastly, the issue of whether a claimant meets the requirements of a Listing is an

administrative finding reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(d)(2) ("Although

we consider opinions from medical sources on issues such as whether your impairment(s) meets

or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to

this subpart . . . the final responsibility for deciding these issues is reserved to the Commissioner.");

*see also Vardon v. Colvin*, No. 5:13-cv-2531, 2015 WL 1346851, at *13 (N.D. Ohio March 23,

2015) ("The issue of whether a claimant meets the requirements of a Listing, like the

ultimate issue of disability, is not a medical determination but rather a dispositive administrative

finding reserved to the Commissioner.") (citing 20 C.F.R. § 416.927(e)).

Accordingly, the Court finds that substantial evidence supports the ALJ's finding that

Plaintiff's mental impairments did not meet Listing 12.04, and Plaintiff's assignments of error do

not constitute a basis for remand.

### 2.      Listing 1.04

Plaintiff claims that the ALJ improperly failed to evaluate the medical evidence regarding whether she met Listing 1.04. [Doc. 19 at 10]. Plaintiff alleges that "counsel for Plaintiff stated in his pre-hearing brief, which was admitted as his opening statement, that Plaintiff intended to rely on Listing 1.04 to show that she meets a listing and is entitled to a finding of disabled; however, the ALJ skipped over [Listing] 1.04 by not addressing the listing." [*Id.* at 11]. The Commissioner maintains that Plaintiff has failed to meet her burden of establishing that her medical impairments met Listing 1.04. [Doc. 21 at 11].

Listing 1.04 covers disorders of the spine, including degenerative disc disease, and requires that the disorder result in "compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. Listing 1.04(A) further requires:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*Id.* Accordingly, in addition to demonstrating a spinal disorder that results in the "compromise of a nerve root," Plaintiff must show (1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss, (4) sensory or reflex loss, and (5) sitting and supine positive straight-leg test results, in order to meet the requirements of Listing 1.04(A). *Id.*

The Court notes that the ALJ erred by failing to specifically address the requirements of Listing 1.04, particularly because Plaintiff raised the issue in her pre-hearing brief. *See Capizzi v. Colvin*, No. 2:14-CV-1063, 2015 WL 5117698, at *4 (S.D. Ohio Sept. 1, 2015) ("Because the Plaintiff stated from the outset of the hearing that he may have equaled Listing 1.04C, the ALJ should have articulated why his impairments did not equal the Listing."). However, "[t]he Sixth

Circuit has declined to adopt a blanket rule that remand is required whenever an ALJ 'provides minimal reasoning at step three of the five-step inquiry.'" *Wischer v. Comm'r of Soc. Sec.*, No. 13-cv-180, 2015 WL 518658, at *12 (S.D. Ohio Feb. 6, 2015), *report and recommendation adopted by*, 2015 WL 1107543 (S.D. Ohio Mar. 11, 2015) (quoting *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 364–66 (6th Cir. 2014)); In *Forrest*, the Sixth Circuit upheld the ALJ's conclusory finding at step three for two reasons: (1) the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three; and (2) even if the ALJ's factual findings failed to support his step three findings, the error was harmless because the plaintiff had not shown his impairments met or medically equaled in severity any of the listed impairments. 591 F. App'x at 366.

Ultimately, it is reversible error for an ALJ to fail to address a listing only if Plaintiff can show that the record raises a "substantial question" as to whether her impairments met or medically equaled the severity of the listing. *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (citing *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 642 (6th Cir. 2013); *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). Plaintiff "must point to specific evidence that demonstrates [s]he reasonably could meet or equal every requirement of the listing." *Id.* at 432. "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Id.* at 433.

Here, Plaintiff fails to point to specific evidence to allege that she met the requirements of Listing 1.04. The Commissioner asserts that Plaintiff fails to establish the requisite motor loss required under Listing 1.04, as the ALJ noted that Plaintiff showed normal muscle strength on examinations in June 11, 2015 and October 27, 2016 [Tr. 22–23 (citing 703–05, 788–89)]. The ALJ stated that the June 11, 2015 examination at Leconte Orthopedics "documented an essentially

normal musculoskeletal exam, where she had full range of motion without pain, normal muscle strength, normal gait and station, and straight-leg raises were asymptomatic bilaterally." [*Id.*]. The ALJ further reviewed that an MRI of Plaintiff's spine on July 6, 2016 "revealed degenerative changes at L4-L5 and L5-S1 levels that appeared very similar to March 15, 2011, imaging with no new disc herniation suggested." [Tr. 23]. Therefore, when discussing Plaintiff's October 27, 2016 treatment record from All Care Family Practice, the ALJ detailed that Plaintiff's "standing and walking were stable and functional and that she had normal muscle strength with normal inspection of the spine except for soreness to palpitation." [*Id.*].

"Because satisfying the listings during the third step yields an automatic determination of disability based on medical findings, rather than a judgment based on all relevant factors for an individual claimant, the evidentiary standards for a presumptive disability under the listings are more strenuous than for claims that proceed through the entire five-step evaluation." *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014) (citing 20 C.F.R. §§ 416.925(d), 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).

Accordingly, to the extent that the ALJ committed error by failing to explicitly identify and evaluate Listing 1.04, the Court finds that such error was harmless. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365-66 (6th Cir. 2014) (holding that "even if [the ALJ's factual findings] failed to support the ALJ's step-three findings," such an "error is harmless" where the claimant "has not shown that his impairment met or medically equaled in severity any listed impairment" during the relevant time period); *Hood v. Colvin*, No. 2:15-cv-70, 2016 WL 8711709, at *5 (M.D. Tenn. July 8, 2016) (finding Plaintiff failed to demonstrate that the ALJ erred by failing to find her impairments met or equaled Listing 1.04(A) under similar circumstances as "the ALJ ultimately relied on the reports of the examining physicians to find that Plaintiff did not meet Listing

1.04(A)”).

### B. ALJ's RFC Determination

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because it was in conflict with Dr. Blanton's opinion, which was supported by the opinions of the nonexamining state agency psychologists, Ms. Hillon's medical source statement, and Plaintiff's mental health treatment records. [Doc. 19 at 12–14]. Plaintiff maintains that the RFC limits Plaintiff to only occasional interaction with co-workers and supervisors, but "with marked limitations, even occasional interaction with co-workers and supervisors would prove difficult for Plaintiff." [*Id.* at 12]. Further, Plaintiff asserts that the RFC did not "take into account Plaintiff's inability to concentrate or stay on task," even as Dr. Blanton found Plaintiff to have moderate to severe limitations in this area. [*Id.*].

Opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). An ALJ is only required to provide good reason for explaining the weight assigned to the opinion of a "treating source." 20 C.F.R. § 416.927(c)(2); *see Perry v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 426 (6th Cir. 2012) ("An ALJ need not 'give good reasons' for the weight he assigns opinions from physicians who, like Dr. Pickering, have examined but not treated a claimant."). In fact, opinions from one-time

consultative examiners are not due any special degree of deference.  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The Court has already detailed the opinions of Dr. Blanton, the nonexamining state agency psychologists, and Plaintiff's therapist—Ms. Hillon, as well as the ALJ's treatment of these opinions.  Plaintiff does not challenge the stated reasoning for assigning little weight to Dr. Blanton or Ms. Hillon's opinion, but claims that the RFC is not supported by substantial evidence because it is in conflict with Dr. Blanton's opinion.  Here, the Court finds that the ALJ appropriately found that Dr. Blanton's opinions that Plaintiff was more than moderately limited in her ability to sustain attention and concentration, interact socially, and adapt were entitled to little weight because they were in conflict with Plaintiff's reported daily activities.  *See Stallings v. Saul*, No. 3:17-CV-516-DCP, 2019 WL 3769626, at *9 (E.D. Tenn. Aug. 9, 2019) ("Here, the ALJ properly found that Dr. Blanton's opinion was in conflict with Plaintiff's reported daily activities, which the ALJ previously discussed in greater detail in the disability decision."); *see also Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 427 (6th Cir. 2014) (noting that plaintiff's daily activities of "personal hygiene and grooming, cooking, cleaning, laundry, driving, shopping, visiting with friends and family, caring for her ill mother, and taking care of her pet bird" constituted substantial evidence in support of a finding that a claimant is not disabled and assigning little weight to treating physician's opinion); *Hobbs v. Comm'r of Soc. Sec.*, No. 5:18-CV-446, 2019 WL 315046, at *13 (N.D. Ohio Jan. 23, 2019) ("The ALJ also complied with the regulations when he explained that consulting physician Dr. Vogelgesang's opinion was due little weight because it was inconsistent with [in part] Hobbs' reported daily living and work activities.").

Therefore, the ALJ was not obligated to include the assessed limitations in Dr. Blanton's opinion into her RFC determination.  Further, the Court notes that it has already found that Dr.

Blanton's opinion was not fully supported by the opinions of the nonexamining state agency consultants, who opined that Plaintiff had mild restrictions in activities of daily living and moderate limitations in maintaining social functioning and concentration, persistence, or pace. The ALJ found that Plaintiff had moderate limitations in mental functioning, and then reviewed the medical evidence of record to determine Plaintiff's RFC with respect to her mental impairments.

The ALJ alone is tasked with the responsibility of assessing a claimant's RFC. 20 C.F.R. § 416.1546(c). "Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). Accordingly, the "ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Id.* Therefore, the Court finds that the ALJ acted appropriately by accepting the parts of Dr. Blanton's opinion that were supported by substantial evidence and rejecting the more than moderate limitations that she found were inconsistent with the record. Although Plaintiff would interpret the medical evidence differently, the Court finds that the ALJ's determination was within her "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009); *see also Huizar v. Astrue*, No. 3:07CV411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings."). Ultimately, the Court finds that the ALJ's RFC determination is supported by substantial evidence, and Plaintiff's assignments of error do not constitute a basis for remand.

## VI.     CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 18**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 20**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**.  The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge